Martin MEDIA, Petitioner,

v.

**PENNSYLVANIA DEPARTMENT OF TRANSPORTATION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1998.
Decided Feb. 17, 1999.

Robert W. Kennedy, Jr., Pittsburgh, for petitioner.

Chester J. Karas, Jr., Pittsburgh, for respondent.

Before DOYLE, J., KELLEY, J., and NARICK, Senior Judge.

DOYLE, Judge.

Martin Media (Martin) has filed petitions for review of two orders of the Department of Transportation (DOT). The first order made final the proposed decision and order (PDO) of a hearing officer affirming DOT's denial of Martin's application for an outdoor advertising permit; the second order denied Martin's petition to file exceptions nunc pro tunc to the hearing officer's PDO.

Martin leased a sign location on the property of Joseph Tlumac, which is located in Mt. Pleasant Township, Westmoreland County (the property). The property is adjacent to the Pennsylvania Turnpike and Tlumac and his wife use the property to store raw materials for their rag rug manufacturing business, known as Rag Woven Rugs. The Tlumacs, on average, keep an inventory of 30 to 40 tons of raw materials on the property, valued at approximately $40,000, which are warehoused in a one-story green metal building (the building) that the Tlumacs' originally constructed as a stable and storage shed for their race horse business. The Tlumacs' building is visible to travelers on the Turnpike and, looking from that highway, the building appears to be a barn or a shed. There is no identification of any kind on the building.

The Tlumacs do not operate their rug business on the property, but rather they manufacture the rugs in the basement of their residence which is located in Acme, Pennsylvania. All the rug looms and business records are kept at the Tlumacs' Acme home. While the business is run from their residence, the Tlumacs sell raw materials to wholesale buyers on the property, and they accept deliveries of materials at the warehouse. The Tlumacs are present on the property a "couple" hours each week, generally in fifteen minute intervals.

On July 1, 1996, Martin filed an application with DOT for an outdoor advertising device permit to erect a sign in an unzoned commercial or industrial area. Such signs are governed by the Outdoor Advertising Control Act of 1971, Act of December 15, 1971, P.L. 596, *as amended*, 36 P.S. §§ 2718.101–2718.115 (Act 160). Under Section 4 of Act 160, 36 P.S. § 2718.104, an applicant desiring to erect a sign on unzoned property along the main highways of the Commonwealth must show that the proposed sign is to be located in a commercial or industrial area. On October 15, 1996, DOT denied Martin's application, because (1) it did not establish that commercial or industrial activity was visible on the property to travelers on the Turnpike, and (2) the building is not contiguous to the commercial activity at the Tlumacs' residence.

Martin appealed DOT's decision to deny their application, and a hearing was conducted by a DOT hearing officer. On December 24, 1997, the hearing officer issued a proposed decision and order, which affirmed DOT's decision to deny Martin's application. The hearing officer accepted DOT's interpretation that, to show that the property was a commercial area for purposes of Act 160, the building had to be recognized as commercial by the travelling public. The hearing officer found that the building did not appear to be a warehouse or commercial structure to the public, but instead looked to passers-by like a barn "set in a meadow next to a grove of trees ." (Proposed Opinion at 5.) Accordingly, the hearing officer concluded that DOT correctly denied the application.

Martin did not file exceptions to the PDO within 30 days of its December 24, 1997 mailing date, and on February 3, 1998, the hearing officer issued an order making the proposed decision and order final. By letter dated February 4, 1998, Martin filed a "Mo-

tion to File Exceptions Nunc Pro Tunc," along with attached exceptions and a supporting brief. The hearing officer denied the motion on February 19, 1998. Martin then filed timely petitions for review with this Court challenging the aforementioned orders; we consolidated the petitions for argument.

On appeal, Martin contends that (1) the hearing officer abused his discretion by denying its motion to file exceptions nunc pro tunc, (2) the hearing officer erred by affirming DOT's decision to deny its sign application, and (3) Martin has been denied its constitutional right to due process because the hearing officer who decided the case, Robert Raymond, Jr., was not the hearing officer who conducted the hearings and heard the testimony.

■ DOT's administrative procedures [1] provide that, when a hearing officer issues a proposed decision and order, a party may file exceptions to the decision within 30 days after the mailing date of the decision. 67 Pa.Code § 491.12(a). But, where exceptions are not filed, 67 Pa.Code § 491.12(d) provides:

> (d) *Waiver.* If no party or other participant files exceptions to the proposed report within the time prescribed in subsection (a), **those persons shall be deemed to have irrevocably waived objections to the proposed report and the proposed report will be deemed approved by the Secretary.**

(Emphasis added.) *See also* 1 Pa.Code § 35.213 (failure to file exceptions to a proposed decision constitutes a waiver of all objections to the proposed report). When a party waives issues by not filing timely exceptions to a proposed decision in accordance with 67 Pa.Code § 491.12(a), those issues are waived on appeal to this Court. *Niles v. Department of Transportation,* 674 A.2d 739 (Pa.Cmwlth.1995).

It is undisputed that Martin failed to file exceptions to the hearing officer's PDO within 30 days after it was mailed (December 24, 1997). Nonetheless, Martin asserts that it should have been permitted to file its exceptions nunc pro tunc because an administrative breakdown caused the PDO to be mailed to the wrong address.

■ Nunc pro tunc relief may be granted if it is established that the failure to file timely exceptions to a proposed report and order was caused by fraud, a breakdown in the administrative process, or the non-negligent conduct of a petitioner or petitioner's counsel. *See Cook v. Unemployment Compensation Board of Review,* 543 Pa. 381, 671 A.2d 1130 (1996). When an agency fails to serve a party with a copy of a hearing officer's proposed report, the party is permitted to file exceptions nunc pro tunc. *Hartman v. State Board of Optometrical Examiners,* 96 Pa.Cmwlth. 291, 507 A.2d 878 (1986) (failure to serve a copy of a proposed report violated petitioner's due process rights and the case was remanded to allow the filing of exceptions); *see also City of Philadelphia v. Workers' Compensation Appeal Board (Operacz),* 706 A.2d 1292 (Pa.Cmwlth.1998).

Martin asserts that an administrative breakdown occurred because DOT knew that its counsel changed his address. Specifically, Martin states that, in its counsel's December 31, 1996 praecipe for appearance, counsel reported his address to be the Gulf Tower in Pittsburgh, Pennsylvania. In February of 1997, however, Martin's counsel moved to a new office on Smallman Street in Pittsburgh. Counsel sent letters to DOT and to DOT's counsel that had the Smallman Street address printed at the top of the page, and he received letters from DOT's counsel at the new address. And, counsel for Martin placed his new address on the record during the hearing on this matter. In addition, the former law partner of Martin's counsel was forwarding mail from the prior address, but the partner claimed that he never received the hearing officer's decision. Furthermore, Martin notes that counsel acted quickly when

---

1. DOT has promulgated rules of administrative practice and procedure, which are found at 67 Pa.Code §§ 491.1–491.13. These rules are intended to supplement and, in some instances supersede, the General Rules of Administrative Practice and Procedure (General Rules), 1 Pa.Code §§ 31.1–35.251. To the extent that DOT's rules do not supplement or supersede the General Rules, the General Rules apply to proceedings before DOT. 67 Pa.Code § 491.1.

he learned of the PDO, filing his motion and exceptions five business days thereafter.

On the other hand, DOT argues that nunc pro tunc relief is not warranted, since DOT's administrative staff properly relied on the Gulf Tower address listed in the praecipe for appearance filed by Martin's counsel. Martin's counsel never filed a revised praecipe for appearance and, in DOT's view, it would be unreasonable to expect the administrative staff to look beyond the address listed in the praecipe for appearance or to impute knowledge of the new address from DOT's counsel to the administrative staff. We must agree with DOT's argument.

■ Generally, the purpose of a written appearance is to provide an address at which papers may be served. *Monaco v. Montgomery Cab Company*, 417 Pa. 135, 208 A.2d 252 (1965); 2 Standard Pennsylvania Practice 2d § 9.3. In practice before Commonwealth agencies, an attorney is required to file a praecipe for appearance by 1 Pa.Code § 31.24(b), which provides:

> If an attorney appears before an agency head or a presiding officer in a representative capacity in a particular proceeding which involves a hearing or an opportunity for a hearing, **he shall file with the office of the agency a written notice of the appearance, which shall state his name, address, and telephone number** and the name and address of the person or persons on whose behalf he appears. **Additional notice** or other written communication required to be served on or furnished to a person may be sent to the attorney of record for the person at the stated address of the attorney.

(Emphasis added.) With regard to the service of proposed decisions, 1 Pa.Code § 35.207 states:

> Proposed reports shall be filed with the office of the agency, which shall serve copies thereof on all parties and staff counsel, **whose appearances have been entered under § 31.24 (relating to notice of appearance).**

(Emphasis added.) The procedure in 1 Pa. Code § 35.207 is supplemented by DOT's rules of procedure, 67 Pa.Code § 491.11, which directs the "administrative docket clerk [to] forward copies of the proposed report to all parties or participants of record."

In our view, it is clear from the above regulations that attorneys are required to file a praecipe for appearance in order to provide an agency with the correct address of the attorney of record. Further, the regulations indicate that the praecipe is to be utilized by an agency to determine the names and addresses of attorneys who must be served with a proposed decision of a hearing officer.

■ In this case, the certified record shows that the proposed decision was mailed on December 24, 1997, and DOT attached a letter to the proposed decision that indicates that DOT's administrative docket clerk mailed it to the Gulf Tower address listed on Martin's counsel's praecipe for appearance. It is undisputed that Martin's counsel never filed a revised praecipe for appearance listing the Smallman Street address. And, while Martin's counsel did send correspondence to DOT and its counsel,[2] the record shows that Martin's counsel never sent a letter to the administrative docket clerk specifically informing her that he had relocated to the Smallman Street address and directing the clerk to send all future correspondence to that address. Therefore, we conclude that the administrative docket clerk's act of mailing the proposed decision to the address listed on counsel's praecipe for appearance was proper under 1 Pa.Code § 31.23 and § 35.207, and 67 Pa.Code § 491.11.

Martin argues, however, that DOT should have mailed the PDO to its counsel at his Smallman Street address. Specifically, Martin claims that DOT was on notice of the new address, because (1) its counsel sent letters

---

2. The correspondence in question are letters written on printed stationary showing Martin's counsel's name, address, and phone number at the top of the page. The address on the stationary is the Smallman Street address. (Reproduced Record at 3a, 7a–8a.) The letters involve routine matters related to the litigation. None of the letters included any language informing the administrative docket clerk that the address on the letter was a new address and that documents should be served on counsel at that location.

to DOT and its counsel which included the new address, (2) its counsel received correspondence from DOT's counsel at the Smallman Street address, (3) its counsel placed the new address on the record during the hearing in this matter, and (4) DOT's counsel knew of the new address. We must disagree.

■ In our view, the burden was on Martin to provide DOT with the correct address to be used for serving it with written documents. Hence, DOT's administrative docket clerk was entitled to rely on the address Martin's counsel provided in his praecipe for appearance, and the clerk was not required to search the record and hearing transcript[3] for inconsistent addresses or to verify the accuracy of Martin's address with DOT's counsel. To hold otherwise would saddle DOT's administrative docket clerk with the Herculean task of comparing the address on each item of mail she receives from an attorney with the address listed on the attorney's praecipe for appearance, of searching all hearing transcripts for inconsistent addresses, and of contacting DOT's counsel to double check every attorney's address before serving an important document. Accepting Martin's view would make it extremely difficult if not impossible for the administrative docket clerk to rely on **any** address provided by an attorney.

■ Further, in *Korell v. Department of Transportation, Bureau of Driver Licensing,* 122 Pa.Cmwlth. 96, 551 A.2d 398 (1988),[4] we held that, where a driver failed to notify DOT of his new address and DOT mailed suspension notices to his old address, no administrative breakdown occurred and the driver was not entitled to appeal those notices nunc pro

tunc. Despite the fact that some of the traffic citations in the record contained the correct address, we reasoned in *Korell* that the delay in filing the appeal was caused by the driver's failure to properly notify DOT of his new address. Likewise, in the instant case, Martin's counsel never filed a revised praecipe for appearance or any other document that was specifically intended to notify DOT's administrative docket clerk of the change of his address. Hence, we conclude that the delay in filing Martin's exceptions, like the delay in *Korell,* was not the result of an administrative breakdown, but rather Martin's counsel's failure to provide DOT's clerk with the correct address to be used when serving documents.[5]

Martin also asserts that the PDO was never received at its counsel's old address, the Gulf Tower in Pittsburgh. Martin explains that its counsel's former law partner, David F. Toal, Esquire, was forwarding mail to his Smallman Street office. Attorney Toal executed an affidavit, stating that the "[p]roposed report was never received by anyone at the Gulf Tower Address." Nevertheless, this Commonwealth recognizes a rebuttable presumption that mailed items are received. *Department of Transportation, Bureau of Driver Licensing v. Grasse,* 146 Pa.Cmwlth. 17, 606 A.2d 544 (1991). This presumption is not nullified solely by testimony denying that the item was received. *Id.* Here, DOT's records show that the proposed decision was mailed. Because Martin is merely denying that it received the proposed decision, its argument is insufficient as a matter of law to rebut the presumption that Martin received the decision. Therefore, this argument must fail.[6]

---

3. While Martin's counsel did place his Smallman Street address on the record during the hearing, he never stated that the Smallman Street address was a *new* address.

4. *Petition for allowance of appeal denied,* 525 Pa. 606, 575 A.2d 571 (1990).

5. Martin argues that its conduct in this matter was not negligent and that, upon discovering that the proposed decision was issued, its counsel acted quickly to seek nunc pro tunc relief. While an attorney's non-negligent conduct and speedy action may be a proper basis for granting nunc

pro tunc relief, *Cook,* we believe that Martin's counsel's failure to update his address cannot be classified as non-negligent. Hence, *Cook* is not applicable here.

6. Martin claims *Grasse* is inapplicable here, since DOT did not deny in its brief in opposition to Martin's exceptions, which was filed during the administrative proceedings, that Martin never received the proposed decision at its Gulf Tower address. Martin, however, cites to eight pages of DOT's brief (R.R. at 141a–149a), and does not point us to any particular page of that document. Moreover, our reading of the document does not

For all the above reasons, we hold that Martin failed to prove that an administrative breakdown on the part of DOT caused Martin to file untimely exceptions to the hearing officer's proposed report. Therefore, DOT correctly denied Martin's motion to file exceptions nunc pro tunc.

Because Martin did not timely file exceptions to the hearing officer's PDO, all of Martin's issues on appeal have been waived.[7] *Niles.* Accordingly, DOT's orders are affirmed.

### ORDER

**NOW,** February 17, 1999, the orders of the Pennsylvania Department of Transportation in the above-captioned matters are hereby affirmed.

Judge KELLEY dissents.

indicate that DOT admitted that Martin never received the proposed report at the Gulf Tower address.

7. Martin contends that its due process rights were violated because the hearing was conducted by Hearing Officer Spencer Manthorpe, but the case was decided by Hearing Officer Robert Raymond. Martin asserts that Hearing Officer Raymond never heard the testimony and was unable to properly assess the credibility of witnesses based solely on the cold record. Although this issue was waived by Martin's failure to file timely exceptions to the proposed decision in this matter, we note that this procedure does not violate a party's due process rights. *Peak v. Unemployment Compensation Board of Review,* 509 Pa. 267, 501 A.2d 1383 (1985); *Cavanaugh v. Fayette County Zoning Hearing Board,* 700 A.2d 1353 (Pa.Cmwlth.1997).