**Robert P. KALIN, Petitioner,**

v.

**PENNSYLVANIA SECURITIES COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued July 10, 2002.

Decided Aug. 9, 2002.

Reargument Denied Sept. 25, 2002.

James J. Kutz, Harrisburg, for petitioner.

Michael J. Byrne, Harrisburg, for respondent.

Before McGINLEY, Judge, FRIEDMAN, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Robert P. Kalin petitions for review of an order of the Pennsylvania Securities Commission (Commission) which: (1) censured Kalin; (2) suspended Kalin's registration as an agent for seven consecutive days; (3) ordered Kalin to pay a $5,000 administrative assessment; (4) ordered Kalin to pay $20,000 which represented a portion of the total investigative and legal costs incurred in this matter; and (5) ordered Kalin to comply with the Pennsylvania Securities Act of 1972 Act[1] (1972 Act) and the regulations promulgated thereunder.

1. Act of December 5, 1972, P.L. 1280, *as amended,* 70 P.S. §§ 1–101—1–611.

Since 1985, Kalin has been a registered securities agent and an investment adviser in Pennsylvania. On June 27, 1997, the Commission Staff (Staff) issued an order to show cause charging therein that Kalin had violated Sections 305(a)(v),[2] 305(a)(vii),[3] 305(a)(ix),[4] 401(b),[5] 401(c),[6] 403,[7] and 407(c)[8] of the 1972 Act. Kalin filed an answer to the order on September 30, 1997. On November 26, 1997, Staff filed an amended order to show cause to which Kalin filed an answer on December 19, 1997.

The order to show cause charged that Kalin had violated the foregoing Sections of the 1972 Act by selling interests in various limited partnerships to thirty-eight Pennsylvania residents beginning in April 1985. Through the sale of these interests, Kalin is alleged to have placed excessive concentrations of the investors net worth in investments that were unsuitable. Kalin was also charged with failing to file annual reports, failing to maintain trial balances, and failing to maintain copies of newsletters issued to his advisory clients in violation of Section 304 of the 1972 Act.[9]

**2.** 70 P.S. § 1–305(a)(v). Section 305(a)(v) provides that the Commission may, by order, deny suspend, or revoke any registration or may censure any registrant if it finds that such order is in the public interest and that such registrant has willfully violated any provision of the Securities Act of 1933, the Securities Exchange Act of 1934, The Trust Indenture Act of 1939, the Investment Advisers Act of 1940, the Investment Act of 1940, the Commodity Exchange Act of 1974, any law of a foreign country governing or regulating any aspect of the business of securities, commodities futures or banking, or any predecessor law, or of any rule or regulation under any of such statutes.

**3.** 70 P.S. § 1–305(a)(vii). Section 305(a)(vii) provides that the Commission may, by order, deny suspend, or revoke any registration or may censure any registrant if it finds that such order is in the public interest and that such registrant has failed reasonably to supervise his agents or employees.

**4.** 70 P.S. § 1–305(a)(ix). Section 306(a)(ix) provides that the Commission may, by order, deny suspend, or revoke any registration or may censure any registrant if it finds that such order is in the public interest and that such registrant has engaged in dishonest or unethical practices in the securities business or has taken unfair advantage of a customer.

**5.** 70 P.S. § 1–401(b). Section 401(b) provides that it is unlawful for any person, in connection with the offer, sale, or purchase of any security in the Commonwealth, directly or indirectly to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading.

**6.** 70 P.S. § 1–401(c). Section 401(c) provides that it is unlawful for any person, in connection with the offer, sale, or purchase of any security in the Commonwealth, directly or indirectly to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person.

**7.** 70 P.S. § 1–403. Section 403 provides that no broker-dealer or agent shall effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in the Commonwealth by means of any manipulative, deceptive or other fraudulent scheme, device, or contrivance, fictitious quotation, or in violation of the 1972 Act or any regulation or order thereunder.

**8.** 70 P.S. § 1–407(c). Section 407(c) provides that neither the fact that an application for registration of securities under the 1972 Act has been filed nor that fact that such application becomes effective constitutes a finding by the Commission that any document filed under the 1972 Act is true, complete or not misleading. Neither any such fact nor the fact that an exemption is available for a security or a transaction means that the Commission has passed upon the merits or qualifications of, or recommended or given approval to any person, security or transaction.

**9.** 70 P.S. § 1–304. Section 304 provides that every registered broker-dealer and investment adviser shall make and keep all accounts, correspondence, memoranda, papers, books and other records which the Commission by regulation prescribes. Section 304 further

Several hearings were held before a hearing officer at which time the Staff presented the testimony of eight of the thirty-eight investors, Staff Investor Patricia Patrick, and William Jordan, an accountancy professor at Florida State University. Kalin testified on his own behalf and presented the testimony of two investors, former employee Jill Schambach, Hester Kalin, his wife, and William A. Collison, an expert.

The hearing officer rejected in part and accepted in part, Dr. Jordan's testimony regarding suitability of the investments and the investors. The hearing officer accepted Mr. Collison's testimony. The hearing officer noted that Staff had stated earlier in the proceedings that it was withdrawing its allegations regarding investor Phyllis Ruch and that Staff had no intention of having Dr. Jordan testify with regard to Ruch. However, Ruch's testimony was videotaped and Dr. Jordan opined that her investments in limited partnerships were unsuitable investments. Kalin objected and the hearing officer decided not to consider Ruch's testimony because of the failure to advise Kalin that Ruch would be testifying. The hearing officer pointed out that Staff did not advise Kalin at any time prior to the hearings that Ruch would testify and that Dr. Jordan would testify concerning her investments.

The hearing officer accepted Dr. Jordan's testimony as credible with respect to one investor and found that Kalin had failed in his duty when advising and investing the funds of investor John Miller. The hearing officer also found Jill Schambach's testimony credible and noted that Investigator Patrick's testimony was unrebutted with respect to Kalin's failure to maintain records and copies of investment letters as required by the 1972 Act.

Based on the evidence presented, the hearing officer found that Kalin recommended and sold to John Miller interests in three limited partnerships. The hearing officer found further that as a result of these sales, John Miller was sold an unsuitable investment because taxable unrelated business income would be generated inside a tax-exempt entity. With respect to Kalin's failure to file certain documents, the hearing officer found that Kalin failed to file annual reports within 120 days following the end of his fiscal year for the years 1992 and 1993 as required by the 1972 Act, and that Kalin failed, as required by the regulations, to: (1) maintain monthly trial balances; (2) make or keep monthly computations of net capital; and (3) maintain copies of newsletters issued to advisory clients. This conduct, the hearing officer found, was willful and formed a basis to suspend, revoke or censure Kalin's registration as an agent pursuant to the 1972 Act.

Accordingly, the hearing officer issued a proposed order suspending Kalin's registration as an agent for a period of sixty days, censuring Kalin, ordering Kalin to pay $25,000 for investigative and legal costs, and ordering Kalin to pay a $10,000 administrative assessment. Both Staff and Kalin filed exceptions to the hearing officer's proposed order.

Staff excepted to the hearing officer's proposed opinion and order on the basis that there was probable basis in the record to support the violations that were not included. Specifically, Staff contended that the record contained evidence to directly support violations by Kalin in transacting securities business with Earl and Faylene Rothermel, Miriam Rhody, and John Miller. Staff also contended that Ruch's testimony was not withdrawn and

provides that every registered broker-dealer or investment adviser shall file such financial reports as the Commission by regulation prescribes.

should be reviewed. Staff conceded that it agreed not to call Dr. Jordan back to testify about his opinion of Ruch's investments but that it did not agree to withdraw Ruch's testimony. Finally, Staff contended that the sanctions should be increased and that the costs should reflect reasonable costs incurred by Staff. Staff did not take exception to any of the findings by the hearing officer with regard to Ruth Letteer.

The Commission rendered its final order and opinion wherein the Commission found that Kalin violated Section 304 of the 1972 Act by failing to: (1) file annual reports; (2) maintain trial balances; and (3) maintain copies of newsletters issued to his advisory clients. With respect to the investors, the Commission only made findings as to the investments made by Kalin for Ruch and Letteer and found that, as a result of the limited partnership sales that Kalin made to Ruch and Letteer, Kalin recommended and sold multiple participations in limited partnerships thereby placing an excessive concentration of Ruch's and Letteer's net worth in investments which, in the aggregate, were unsuitable and, as to which, Kalin did not have reasonable grounds to believe the recommendations and sales were suitable based upon his inquiry into Ruch's and Letteer's investment objectives, financial situations, needs and other relevant information. The Commission concluded that by engaging in the foregoing acts and conduct, Kalin has engaged in unethical conduct in violation of Section 305(a)(ix) of the 1972 Act.

Thus, the Commission issued an order censuring Kalin, suspending his registration as an agent for seven days, ordering

Kalin to pay a $5,000 administrative assessment, and ordering Kalin to pay $20,000 as part of the total investigative and legal costs. This appeal by Kalin followed.[10]

Herein, Kalin raises the following issues:

1. Whether the Staff waived the argument that Kalin violated the 1972 Act by placing an excessive concentration of Ruch's and Letteer's net worth in certain investments.

2. Whether the Commission's conclusion that Kalin violated the 1972 Act by placing an excessive concentration of investors' net worth in unsuitable investments was a violation of Kalin's constitutional rights since no statute or regulation exists which provides guidance as to what conduct constitutes excessive concentration and application of such undefined standard is unconstitutionally vague and in violation of Kalin's right to due process of law.

3. Whether the Commission's order is supported by substantial evidence, contains errors of law, or violates Kalin's constitutional rights.

4. Whether the Commission's decision violates Kalin's rights to due process when the issue of whether Kalin placed an excessive concentration of Ruch's and Letteer's net worth in unsuitable investments was never before the Commission and no expert testimony was presented in support thereof.

5. Whether the hearing officer's evidentiary rulings were so egregious and flawed that Kalin's right to due process of law was violated.

---

**10.** On appeal, this Court must affirm the agency's adjudication unless we find that it violates constitutional rights, is contrary to law, or is based on findings of fact which are not supported by substantial evidence. *Ardol-*

*ino v. Pennsylvania Securities Commission,* 145 Pa.Cmwlth. 40, 602 A.2d 438 (1992). Substantial evidence is that evidence which a reasonable person might accept as adequate to support the conclusion reached. *Id.*

■ First, Kalin argues that Staff waived any argument that it may have had that Kalin placed an excessive concentration of Ruch's and Letteer's net worth in unsuitable investments by failing to file exceptions to the recommended decision on that issue. Kalin contends that there is no mention in the exceptions to Letteer and with respect to Ruch, Staff merely complained that her testimony should be included in the record and that the hearing officer should have concluded that Kalin overstated Ruch's net worth. Kalin argues that the hearing officer did not conclude that Kalin placed an excessive concentration of Ruch's and Letteer's net worth in unsuitable investments. Kalin contends that Staff simply did not file exceptions on this point; therefore, this point has been waived pursuant to Section 35.213 of the General Rules of Administrative Procedure, 1 Pa.Code § 35.213 (failure to file a brief on exceptions shall constitute a waiver of all objections to the proposed report).

In response, the Commission contends that Section 35.226(a)(2) of the General Rules of Administrative Procedure, 1 Pa. Code § 35.226(a)(2), provides the authority for the Commission to initiate a review of the hearing officer's recommended decision on issues not limited to those as to which exceptions were filed by either party. The Commission contends that in its order of February 20, 2001 granting oral argument, it notified the parties of its intention to initiate a review of the entire record in this matter. The Commission argues that the regulations relied upon by Kalin in support of his waiver argument are inapposite because those provisions apply to the participants and are inapplicable to an agency head. Therefore, the Commission contends that it properly considered issues not raised by the parties by way of exceptions.

Section 35.211 of the General Rules of Administrative Procedure, 1 Pa.Code § 35.211, provides that a participant desiring to appeal to an agency head shall, within thirty days after the service of a copy of the proposed report, file exceptions to the proposal or part thereof in a brief designated "brief on exceptions." Section 35.213 of the General Rules of Administrative Procedure, 1 Pa.Code § 35.213, provides that the failure to file a brief on exceptions within thirty days shall constitute a waiver of all the objections to the proposed report.

Section 35.226(a)(2) of the General Rules of Administrative Procedure, 1 Pa.Code § 35.226(a)(2), governs final orders and provides, in its entirety, as follows:

(a) Adjudications of an agency head shall be final orders, subject only to application for rehearing, if any, provided by the statute under which the proceeding is initiated and conducted, except proposed regulations that may be issued in rule making. Final orders shall include:

. . . .

(2) Adjudications by that agency head upon appeal of proposed reports by participants, by filing exceptions in the manner and time provided by § 35.211 (relating to procedure to except to proposed report), or upon review initiated by the agency head within 10 days next following the expiration of the time for filing exceptions under the section, or another time as the agency head may fix in specific cases.

Based upon our review of Section 35.226(a)(2) of the General Rules of Administrative Procedure, we reject the Commission's argument that it acted properly in this matter. The use of the word "or" in Section 35.226(a)(2) clearly means that an adjudication by an agency head becomes a final order two separate ways:

(1) upon appeal of a proposed report by the participants by filing exceptions in the manner and time provided by Section 35.211; *or* (2) upon review initiated by the agency head within ten days next following the expiration of the time for filing exceptions. Thus, the language of Section 35.226(a)(2) indicates that if the parties do not file exceptions, the agency head can then initiate a review. The plain language of Section 35.226(a)(2) means that the adjudication becomes final after an appeal based upon either the filing of exceptions or upon review initiated by the agency head, not both. To hold otherwise, would enable an agency head to raise and review any issues not advocated by its own agency by way of exceptions.

Herein, the participants did file exceptions within the mandated thirty day time period; therefore, review of the hearing officer's proposed order was not initiated by the Commission but by exceptions. Therefore, the Commission was bound to only dispose of those issues properly raised by way of exceptions. Moreover, even if it can be said that the Commission could initiate a review even if the parties have filed exceptions, in this case, the Commission did not initiate a review of the hearing officer's proposed opinion and order until it issued its February 20, 2001 order. The hearing officer's proposed opinion and report was filed on July 17, 2000; therefore, pursuant to Section 35.226(a)(2), the Commission had until August 27, 2000 to initiate an initial review. Accordingly, the February 20, 2001 order is clearly outside the time limit set forth in Section 35.226(a)(2).

In addition, the Commission does not contend that it fixed another time in this specific case to initiate a review other than the time frame permitted in Section 35.226(a)(2). To adopt the Commission's position that it may initiate a review of a proposed report at any time regardless of whether exceptions have been filed in a case renders the time limits found in the General Rules of Administrative Procedure superfluous and also negates the first clause of Section 35.226(a)(2). Clearly under the plain language of Section 35.226(a)(2), if the parties choose to file exceptions to a proposed report, an agency head, such as the Commissioner, cannot arbitrarily choose to initiate a review outside the time limits if the Commissioner later believes that its Staff has not timely raised an issue by exception.

A review of the exceptions filed by Staff in this matter reveals that Staff did not raise any issues with respect to investor Letteer. Therefore, Staff waived any issue with regard to Letteer. *See* 35 Pa. Code § 35.213; *Niles v. Department of Transportation*, 674 A.2d 739 (Pa.Cmwlth. 1995) (Issues not raised by exception are waived). Accordingly, the Commission erred in finding a violation of Section 305(a)(ix) of the 1972 Act, 70 P.S. § 1–305(a)(ix), based on Kalin's investment of Letteer's assets.

With respect to investor Ruch, Staff excepted to the hearing officer's exclusion of Ruch's testimony. Staff specifically contended further that, based on Ruch's testimony, the Commission should find that Kalin's conduct with respect to Ruch's investments resulted in Kalin engaging in fraud and deceit in willful violation of Section 401(c) of the 1972 Act, 70 P.S. § 1–401(c).[11] Staff did not contend, as found by the Commission, that Ruch's testimony supported a finding that Kalin violated Section 305(a)(ix) of the 1972 Act by placing an excessive concentration of Ruch's

---

11. As noted previously herein, Section 401(c) prohibits any person to engage in any act, practice or course of business, which operates or would operate as a fraud or deceit upon any person in connection with the offer, sale or purchase of any security.

net worth in investments which were unsuitable. Therefore, by not raising by way of exception the issue of whether Kalin violated Section 305(a)(ix) of the 1972 Act by placing an excessive concentration of Ruch's net worth in investments which were unsuitable, Staff waived this issue. *See* 1 Pa.Code § 35.213; *Niles.* Accordingly, the Commission also erred in finding a violation of Section 305(a)(ix) of the 1972 Act based on Kalin's investment of Ruch's assets.

Our resolution of the first issue raised herein leaves the sole issue for review of whether the Commission's findings that Kalin violated Section 304 of the 1972 Act, 70 P.S. § 1–304, and the accompanying regulations, are supported by substantial evidence.[12] In support of this issue, Kalin argues that Staff presented no documentary evidence to support its allegations that Kalin failed to file annual reports or to maintain certain records. Kalin contends that Staff relied solely upon Investigator Patrick's testimony; however, her testimony was uncertain and equivocal.

■ The Commission found three violations of Section 304 of the 1972 Act and the accompanying regulations.[13] First, the Commission found that Kalin violated Section 304 and 64 Pa.Code § 304.022 by failing to file annual reports within 120 days following the end of the fiscal years for years 1992 and 1993.[14] The Commission points out that Kalin admitted to this violation in his answer to the order to show cause and in his testimony before the hearing officer. Kalin admits in his reply brief that this charge is not disputed for the year 1997. However, our review of Kalin's answer and his testimony reveals that he did in fact admit that he failed to file annual reports as required by Section 304 and 64 Pa.Code § 304.022 for the years 1992 and 1993. *See* Reproduced Record (R.R.), Volume X at 4554a and Volume V at 2245a. Accordingly, we conclude that this finding is supported by substantial evidence.

■ Second, the Commission found that Kalin violated Section 304(a) of the 1972 Act and 64 Pa.Code § 304.012(a) by failing to maintain copies of newsletters issued to his advisory clients. Our review of the record reveals that this finding is supported by substantial evidence.

Section 304.012(a) of Title 64 of the Pennsylvania Code provides, in pertinent part, that every investment adviser shall maintain copies of all newsletters issued to advisory clients for a period of at least 5 years from the end of the fiscal year during which the last entry was made on record. Investigator Patrick testified that Kalin was only able to provide copies of newsletters for a twelve-month period and that he had stated that fact to her in writing. R.R., Volume II at 702a; 765a. Kalin testified that he was unaware of any

---

**12.** We note that both Kalin and Staff raised the issue of whether Kalin violated Section 304 of the 1972 Act and accompanying regulations in their respective exceptions.

**13.** Pursuant to Section 507 of the Administrative Agency Law, 2 Pa.C.S. § 507, all adjudications of a Commonwealth agency must contain findings and the reasons for the adjudication. Herein, the Commission has made findings but those findings do not contain any explanation or reasons for the findings. In effect, the findings border on conclusions due to the lack of specificity. We point out that in the future, it would enable this Court to conduct a more efficient review of a matter adjudicated by the Commission if the Commission would more fully explain its findings and cite to the record where support for those findings can be found.

**14.** Section 304.022 of Title 64 of the Pennsylvania Code provides that investment advisers must file reports of financial condition with the Commission within 120 days of the investment adviser's fiscal year end. 64 Pa.Code § 304.022.

requirement that he had to retain the newsletters and had destroyed certain newsletters. R.R., Volume V at 2093a. Therefore, the Commission's finding that Kalin failed to properly maintain copies of newsletters issued to his advisory clients must stand.

██ Finally, the Commission found that Kalin violated Section 304 of the 1972 Act and 64 Pa.Code § 304.012(a) by failing to maintain trial balances. Section 304.012(a) of Title 64 of the Pennsylvania Code provides, in pertinent part, that every investment adviser shall make and keep true, accurate and current all trial balances.

Our review of Investigator Patrick's testimony reveals that the Commission's finding is not supported by substantial evidence. Investigator Patrick examined Kalin's records in order to ascertain whether Kalin was in compliance with the reporting requirements of the 1972 Act. Investigator Patrick testified that her preliminary review indicated possible violations of the 1972 Act. R.R., Volume II at 701a. Investigator Patrick testified that Kalin, as an investment adviser, was required to make and keep monthly trial balances. *Id.* at 702a. Investigator Patrick further testified that she believed that he had not kept or made the required trial balances. *Id.* While ˙Investigator Patrick's testimony was unrebutted, her belief that Kalin did not keep or make the required trial balances is not supported by any reference to Kalin's records which prove that he did not comply with this requirement. Investigator Patrick simply states her belief without offering any specifics to support that belief. Therefore, we conclude that her testimony is speculative and not sufficient to support the Commission's finding that Kalin violated Section 304 of the 1972 Act and 64 Pa. Code § 304.012(a) by failing to maintain trial balances.

Accordingly, the Commission's order is reversed with respect to that portion which is based upon the Commission's findings and conclusions that Kalin violated Section 305(a)(ix) of the 1972 Act by engaging in unethical conduct and practices in the securities business when Kalin recommended and sold Ruth L. Letteer and Phyllis R. Ruch multiple participations in limited partnerships. The Commission's order is also reversed with respect to that portion which is based upon the Commission's finding and conclusion that Kalin violated Section 304 of the 1972 Act and 64 Pa.Code § 304.012(a) by failing to maintain trial balances.

The Commission's order is affirmed with respect to that portion which is based upon the Commission's findings and conclusions that Kalin committed two violations of Section 304 of the 1972 Act and 64 Pa.Code §§ 304.012–304.022 by failing to comply with the reporting and record keeping requirements mandated therein. This matter is remanded to the Commission for the imposition of an appropriate penalty based solely on Kalin's two violations of Section 304 of the 1972 Act and the accompanying regulations.

### ORDER

AND NOW, this *9th* day of *August,* 2002, in accordance with the foregoing opinion, the order of the Pennsylvania Securities Commission in the above captioned matter is affirmed in part, reversed in part, and this matter is remanded for imposition of an appropriate penalty.

Jurisdiction relinquished.